

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 16, 1948

Hon. George B. Butler, Chairman
Board of Insurance Commissioners
Austin 14, Texas

Attention:  Mr. Will G. Knox
            Legal Examiner

Opinion No. V-636.

Re:  Authority of a title
     insurance company
     under Article 1302a,
     V.C.S., to acquire an
     abstract plant in a
     county of less than
     90,000 population.

Dear Sir:

By letter dated June 10, 1948, you request advice as follows:

"A group of citizens of Cherokee County have advised us that they will in due course submit Articles of Incorporation for a title corporation to be organized under Article 1302a and have stated that they wish to purchase an abstract plant in Cherokee County.

"Please advise me whether a title corporation organized under Article 1302a, Vernon's Annotated Civil Statutes, may purchase an abstract plant in the county of its domicile, having a population of less than Ninety Thousand according to the last preceding Federal census."

Article 1302a, V.C.S., was originally enacted as H.B. 153, Acts 41st Leg., R. S., 1929, Chapter 40, page 77. Nowhere therein was a title insurance company

prohibited from acquiring an abstract plant in any county of any size. On the contrary, it clearly contemplated the acquisition of such plants in any county as a necessary incident of the business authorized.

The caption of the original Act provided in part:

"An Act authorizing the creation of corporations for the purpose of compiling and/or acquiring and owning abstract plants in this or any other state, and to compile and sell abstracts of titles therefrom and to insure the title to lands and interests therein and liens thereon, . . ."

The Act then provided:

"Section 1. Private corporations may be created for the following named purposes:

"(1) To compile and own, or to acquire and own records or abstracts of title to lands and interests in lands; and to insure titles to lands or interests therein, both in Texas and other states of the United States, and indemnify the owners of such lands, or the holders of interests in or liens on such lands, against loss or damage on account of encumbrances upon or defects in the title to such lands or interests therein.

"Such corporations may also exercise the following powers by including same in the charter when filed originally, or by amendment:

"(2) Make and sell abstracts of title in any counties of Texas or other states."

Section 2 of the original Act was described in the caption as:

". . . regulating the amount of paid in capital of all corporations operating under this Act. . ."

It was then provided by Section 2 that:

"All corporations created and/or operating under the provisions of this law must have a paid-up capital of not less than One Hundred Thousand ($100,000.00) Dollars. Any corporation organized hereunder having the right to do a title insurance business may invest as much as fifty per cent of its capital stock in an abstract plant or plants, provided the valuation to be placed upon such plants shall be approved by the Board of Insurance Commissioners of this State. . ."

Thus, nothing in the caption or the provisions of Section 2 of the original Act indicated an intention to do more than to regulate the amount and character of permissible capital and to place a limitation on the proportion of capital which might be invested in abstract plants.

By amendment, Section 2 was changed by S.B. 283, Acts 43rd Leg., R. S., 1933, Chapter 222, page 750, to its present form. The caption of the amendatory Act provided:

"An Act to amend Section 2, of an Act passed by the Legislature of Texas, February 26, 1929, House Bill No. 153, relating to title insurance business and the capital stock of corporations doing such a business; regulating the amount of capital stock of companies which may be invested in abstract plants; and declaring an emergency."

Section 2 of the original Act as thus amended thereupon read:

"Section 2. All corporations created and/or operating under the provisions of this law must have paid up capital of not less than One Hundred Thousand ($100,000.00) Dollars. Any corporation organized hereunder having the right to do a title insurance business may invest as much as fifty (50%) per cent, of its capital stock in an abstract plant or plants, provided the valuation to be placed upon such plant or plants

shall be approved by the Board of Insur-
ance Commissioners of this State; provided,
however, that if such corporation is not
doing a trust business as provided in Sec-
tion 1, Article 4 of the Act hereby amended,
and maintains with the Commissioner of In-
surance the deposit of One Hundred Thousand
($100,000.00) Dollars, in securities as pro-
vided in Section 6 of the Act hereby amend-
ed, such of its capital in excess of fifty
(50%) per cent, as deemed necessary to its
business by its Board of Directors may be
invested in abstract plants; and provided
further that no such corporation may here-
after acquire more than one abstract plant
in any one county and shall not hereafter
acquire any plant in any county in this
State having a population of less than nine-
ty thousand (90,000) according to the last
preceding Federal census."

It is to be noted that nothing in the cap-
tion of the amending Act would indicate an intention
to do more than to regulate the investment of capital
stock. Nothing is there present to indicate an inten-
tion to prohibit entirely the acquisition of abstract
plants in smaller counties. In other words, the cap-
tions of both Acts as they relate to Section 2 deal
solely with security and soundness of investment pol-
icy. This is also borne out by the emergency clause
of the amendatory Act, which reads:

"The fact that under the existing law'
the people dealing with the aforementioned
corporations have not had adequate protec-
tion creates an emergency. . ."

The text of Section 2 as originally enacted and as
amended indicates an intention to leave the concerns
free to invest in abstract plants provided not more
than 50% of the capital is utilized for that purpose.

The amendment offered an exception to the
50% limitation in the utilization of capital for in-
vestment in abstract plants, where such a concern did
not do a trust business and where it maintained
$100,000.00 on deposit as security for its commit-
ments. In such event, it was allowed to invest in

excess of 50% of its capital in abstract plants.  But
this concession carried a proviso or limitation which
the Legislature must have considered an appropriate
security measure by preventing concentration of such
excessive investments of capital in one county and by
preventing such excessive investments in small coun-
ties.  These provisions do not, then, prohibit any
such "investment" or "acquisition" in a county of less
than 90,000 population where the concern will not have
invested more than 50% of its capital stock in abstract
plants as a result of such "acquisition".

Such a construction is consistent with the
validity of Section 2 as amended as being germane to
the caption, and does not bring the statute into con-
flict with the rule stated in 39 Tex. Jur., pp. 104,
105, Section 48, that:

> "A title expressing a purpose to amend
> a statute in a certain particular is decep-
> tive and misleading in so far as the body
> of the Act purports to amend the prior law
> in other particulars.  The amendatory Act
> is void to the extent that its provisions
> go beyond express limitations or the scope
> of the title."

A construction that the amendment was intended to and
does prohibit under all circumstances the acquisition
of an abstract plant in a county of less than 90,000
population would, in our opinion, effect an amendment
and proviso to not only Section 2, but also to Section
1 of the original Act, authorizing such concerns to
acquire abstract facilities and to "make and sell ab-
stracts of title in any counties of Texas." (Emphasis
supplied)  This would be a broader amendment than ap-
pears to have been intended.

That the last "proviso" in Section 2 is a
limitation only on the next preceding "proviso" is
supported by the cases cited to the text of 39 Tex.
Jur. 193, Section 102, to the effect that:

> "Ordinarily a proviso is limited to
> the clause which next precedes it and to
> which it is attached.  So where there are
> successive provisos, the qualifying terms
> of the last will be understood as refer-
> ring to the one next preceding."

This language is cited in Tide Water Oil Co. v. Bean, 148 S. W. (2d) 184, 191, decided by the Court of Civil Appeals at Dallas in 1941, which also cites the text of Frix v. State, 148 Tenn. 478, 256 S. W. 449, 451, where the Court said:

"The rule of construction being that a proviso must be limited to its application in the particular section of the statute in which it is found, unless a contrary intent clearly appears, certainly it should be held that the effect of a proviso in an amendatory statute should be limited in its application to the statute in which it is found, and not extended to the original statute of which the statute containing the proviso is an amendment."

You are therefore advised that a title insurance corporation organized under Article 1302a may acquire an abstract plant in a county of less than 90,000 population if such will not effect the investment of more than 50% of its capital stock in an abstract plant or plants.

## SUMMARY

A title insurance corporation organized under Article 1302a, V. C. S., may acquire an abstract plant in a county having less than 90,000 population, if such will not result in the investment of more than 50% of its capital stock in an abstract plant or plants.

Yours very truly

APPROVED:

ATTORNEY GENERAL OF TEXAS

*Fagan Dickson*

*Ned McDaniel*

FIRST ASSISTANT
ATTORNEY GENERAL.

By

Ned McDaniel
Assistant

NMc: rt:jmc